BOARD OF COUNTY COMMISSIONERS FOR
PRINCE GEORGE'S COUNTY *v.*
FARR, ET AL.

[No. 315, September Term, 1965.]

*Decided April 26, 1966.*

The cause was argued before PRESCOTT, C. J., and MARBURY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*Lionell M. Lockhart,* with whom were *Harry L. Durity, Joseph S. Casula, James J. Lombardi, L. David Ritter, Jr.* and *Frank M. Kratovil* on the brief, for appellant.

*Blair H. Smith,* with whom was *Heiskell R. Gray* on the brief, for appellees.

OPPENHEIMER, J., delivered the opinion of the Court.

The appellees, owners of three of the five parcels of land in Prince George's County between an apartment development and a community of single residences, duly petitioned for zoning reclassifications of their properties from residential to multiple-family, medium density residential. The Technical Staff of the Maryland-National Capital Park and Planning Commission recommended denial of the applications; the Commission disagreed, recommending approval; the Board of County Commissioners for Prince George's County, sitting as a District Council, denied the applications; and, on appeal, the Circuit Court reversed. On this appeal, the Council, the appellant, concedes that there have been substantial changes in the area since the adoption of the zoning map in 1949. The question is whether the decision of the Council to maintain the zoning line, despite the changes, was arbitrary and capricious.

The three lots consist of approximately 62,000 square feet and are situated on the north side of Oak Street, adjoining the limits of the Town of Cheverly. At the present time, only 12 feet of Oak Street is paved. The lots, with two others not here involved, are within the general area formed by the John Han-

son Highway, U. S. Route 50; the Landover Highway; Maryland Route 202; the clover leaf interchange; Oak Street and Magruder Avenue. The property in this general area, other than these five lots, has been reclassified to the Multi-Family Density or Commercial Zone. The area consisting of the five lots is bounded on two sides by low-rise apartments, on one side by a highway, to which there is no access from the lots, and on one side by single family residences located in Cheverly which is directly across Oak Street. The applications for rezoning, filed in 1963, were for reclassification from the R-55 Zone (One-Family, Detached Residential) to the R-10 Zone (Multiple Family, Medium-Density Residential), under which only high-rise apartments can be built.

The report of the Technical Staff on the applications was filed on May 13, 1964. It contains the zoning history of the three lots, the results of a field inspection, and the reasons for the recommendation that the applications be denied. The zoning history shows that previous requests for reclassification of two of the three lots (together with a request for the rezoning of another of the five lots, not presently involved) had been made in January 1963. The Technical Staff and the Commission recommended denial of these previous applications and the requests had been permitted to expire without further action. The field inspection showed that two of the lots presently involved are vacant, but that the third is improved by a modern, brick single-family residence.

The Technical Staff gave the following reasons for its recommendation that the present applications be denied:

"(1) The requested reclassifications are not in accordance with the land use proposed for the area by the Master Plan for Bladensburg-Defense Heights.

"(2) Available access is inadequate to serve higher density residential use.

"(3) Shopping facilities within the area are inadequate to serve the population which would be developed by increasing the residential density.

"(4) The changes which have occurred in the area are, without exception, oriented toward Landover Road and were partly justified on this basis. The sub-

ject properties do not possess this geographic sim-
ilarity and are clearly a part of the single-family resi-
dential area.

"(5) The requested reclassification would constitute
'spot' zoning within an established, well-maintained
single-family residential neighborhood."

The Planning Commission did not follow its Staff's recom-
mendation, and recommended that the requests be granted, with
the provision that enough ground be withheld to provide for a
70 foot right-of-way for Oak Street. As reasons for its recom-
mendation, the Commission stated:

"1. Based on evidence of zoning and physical change
(such as the interchange and the Hanson Arms Apart-
ments) in the area, there is sufficient change in the
character of the area to justify the request.

"2. Approval of the request will provide for a zon-
ing pattern that can produce a more compatible land
use pattern."

The Council held a hearing on August 19, 1964. At this hear-
ing, the applicants showed that, since the adoption of the zon-
ing map in 1949, ten applications for rezoning in the general
area had been granted. However, the Bladensburg-Defense
Heights Master Plan was adopted in 1960. Only three rezon-
ing petitions had been granted since the adoption of the plan.
These reclassifications, two of which were for commercial use,
were of properties along or across Landover Road, not ad-
jacent to the properties here involved. In addition to the ten
reclassifications since 1949, the appellees list as material changes
the completion of the John Hanson Highway, with interchange
at Route 202, and of the dual highway from the John Hanson
Highway to Old Annapolis Road, both of which took place in
the fall of 1961. The completion of the highways admittedly
was considered in the formulation of the Bladensburg Plan.

At the hearing, Mr. Ben Dyer, a professional land planner
and Mr. James Walcroft, a realtor and appraiser testified on
behalf of the appellees. Mr. Dyer stated that, in his opinion,
the requested rezoning would complement the area and tend
to fill in an area that is now surrounded on two sides by mul-

ti-family use and on the third side to the east by a major highway. He referred to the availability of water and sewer and to the location of the properties within walking distance of recently constructed commercial stores and the proximity of three major shopping centers. He did not foresee any difficulty with traffic problems, especially in view of the proposed improvement of Oak Street. Mr. Walcroft testified that, in his opinion, there was need for additional multi-family units and that apartment development would enhance the value of the residential properties south of Oak Street.

Mr. George Bailey, the owner of a house in Cheverly "around the corner" from the properties, testified, in opposition to the granting of the applications, that Oak Street is overloaded with traffic even at the present time. Access to Route 202 for the present apartment development is through Magruder Avenue, which intersects Route 202. The erection of the proposed additional apartment house would increase the traffic on Magruder Avenue and at the intersection. He admitted that the erection of a traffic light at the intersection, for which funds have been provided, would be a material help. Mr. Ralph Wagner, another resident of Cheverly, owns a house directly across from one of the lots for which reclassification is sought. Oak Street, he testified, is not suitable for additional traffic. There is a problem now created by parked cars, which would be greatly intensified by the erection of the proposed high-rise apartment on this street. The Council permitted the report of the Technical Staff to be filed after the hearing, and, in due course, denied the applications, without findings or opinion. The applicants appealed.

The opinion and order of the Circuit Court was based on the record before the Council. In his oral opinion, Judge Dorsey found that the requested reclassification was not spot zoning. He said he felt that the natural place for the rezoning to stop in the area is along the highway shown in the plan. Relying upon *Board of County Comm'rs of Prince George's County v. Oak Hill Farms, Inc.*, 232 Md. 274, 192 A. 2d 761 (1963), he found the Council's action in denying the applications was arbitrary and capricious, and ordered it reversed.

In this appeal, the Council concedes that there were material

changes in the area since the adoption of the zoning map, and that the requested reclassifications would not constitute spot zoning. It contends, however, that there was substantial evidence to support the denial of the requested rezoning and that the action of the Council was not clearly erroneous and was at least fairly debatable. We agree.

In *County Council for Mongtomery County v. Gendleman*, 227 Md. 491, 498, 177 A. 2d 687 (1962), Chief Judge Brune, for the Court, stated the principle which we find to be applicable to the present case, as follows: "Even if there were facts which would have justified the Council in rezoning the property, this would not of itself prove the denial of rezoning illegal. There is still the area of debatability, and one who attacks the refusal of rezoning must meet the heavy burden of proving that the action of the legislative body in refusing it was arbitrary, capricious or illegal." Chief Judge Brune said, further: "Zoning and rezoning do require the drawing of lines, and the legislative body may draw them subject to the same limitations as are applicable to other phases of the zoning process." It was held in that case that, on the record before the Council, its action in refusing to rezone the property involved was not beyond the field in which its action was fairly debatable. The Council "was not bound to extend that classification [commercial-office use] beyond the lot at which it had elected to stop."

In this case, the report of the Technical Staff, which was before the Council, pointed out that the requested reclassifications were not in accord with the land use advocated for the area by the Bladensburg-Defense Heights Master Plan. The adoption of a master plan does not take the place of the existing comprehensive zoning map adopted by the legislative body, but the plan nevertheless is a factor to be considered by the Council. See *Board of County Comm'rs of Prince George's County v. Edmonds*, 240 Md. 680, 687, 215 A. 2d 209 (1965). The three departures from the master plan since its adoption were not shown to have directly affected the properties here involved, or to have vitiated the plan. There was substantial testimony before the Council, by adjacent property owners, in support of the conclusion of the Technical Staff that the available access to the properties is inadequate to serve the high

density use, if the proposed high-rise apartment were erected. The physical facts show that the properties involved can properly, although not necessarily, be regarded as part of the single-family residential area which they adjoin.

The appellees marshal the substantial testimony adduced on their behalf to show that the requested rezoning would be consonant with the development of the area and that there would be no difficulty with traffic problems. They emphasize the reclassification of the adjoining property on two sides of the lots involved for apartment use. But, as we pointed out in *Baker v. Montgomery County Council,* 241 Md. 178, 185, 215 A. 2d 831 (1966), the rezoning of abutting property does not always warrant the rezoning of adjacent property. The court below was of the opinion that the natural place for the rezoning to stop in the area is beyond the properties involved. But this was the question for the Council's judgment. "As we have repeatedly emphasized, it is not for the courts to zone or rezone; the courts will not substitute their judgments for that of the expertise of the zoning officials." *Pallace v. Inter City Land Co.,* 239 Md. 549, 556, 212 A. 2d 262 (1965).

We have consistently held that the fact the zoning body, on the record before it, had the legal authority to grant the petition for reclassification if it had deemed such action proper, does not mean the action denying the application is to be reversed, when the decision is supported by substantial evidence and is not arbitrary or capricious. *Mothershead v. Board of County Comm'rs of Prince George's County,* 240 Md. 365, 214 A. 2d 326 (1965); *Sampson Bros., Inc. v. Board of County Comm'rs of Prince George's County,* 240 Md. 116, 213 A. 2d 289 (1965); and *Pallace v. Inter City Land Co., supra.*

*Oak Hill Farms, supra,* is not apposite. In that case, as the opinion makes clear, and as we have emphasized in subsequent decisions, the disapproval of the Technical Staff was based upon a tentative master plan which had not been adopted and there was no material evidence to support the Council's refusal to reclassify the property. *Sampson Bros., supra,* at 120, and *Dal Maso v. Board of County Comm'rs of Prince George's County,* 238 Md. 333, 340, 209 A. 2d 62 (1965). Here, the master plan, with which the Council's decision was in accord, had been

adopted several years before the application, and there was substantial, material evidence before the Council to make its decision reasonably debatable.

> *Order reversed and case remanded for the entry of an order affirming the action of the Council; appellees to pay the costs.*