ESCHINGER *v.* BUS, ET AL.

[No. 137, September Term, 1967.]

*Decided May 28, 1968.*

The cause was argued before HAMMOND, C. J., and HOR-* McWILLIAMS, FINAN and SINGLEY, JJ.

*Malcolm B. Smith,* with whom was *Smith & Wohlgemuth* on the brief, for appellant.

*W. Harvey Beardmore,* with whom was *Rouse & Beardmore* on the brief, for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

The appellant, Eschinger, owns one hundred acres of land fronting on Brewer's Creek, a tributary of the South River in

Anne Arundel County. In 1956 he was granted a rezoning of 1.44 acres at the waterfront from agricultural to heavy commercial to permit the building of a marina. The surrounding ninety-eight acres plus remained agricultural.

In 1965 when he sought additional mooring spaces, Eschinger was told by the zoning authorities that he lacked space on his commercially zoned land to build an additional pier and, what to him was worse, that seven of his existing twenty-seven slips at the north end of the marina were beyond the commercial line and, therefore, illegal. This irregularity, it developed, was due to the mistake of the surveyor who laid out the commercial area.

Eschinger then sought rezoning to heavy commercial of the 0.21 acres occupied by the seven innocently illegal slips and also sought the same classification for 0.12 acres at the south end of the marina to permit the construction of twelve new slips, six of which he intended to use for boats awaiting engine repairs and six for rental to local boat owners who needed space and had requested it of him.

The Zoning Hearing Officer denied the applications in December 1965. The Board of Appeals concluded that Eschinger should have sought reclassifications to one of the two maritime districts, new classifications in the County, created by the County Commissioners on June 25, 1964, and remanded the matter for consideration anew by the Zoning Hearing Officer. Eschinger amended his applications to request the rezoning of the 1.44 acres from heavy commercial to Maritime B and of the 0.21 and 0.12 acres from agricultural to Maritime B.

The Zoning Hearing Officer again denied the applications. The parties submitted the case to the Board of Appeals on the transcript and exhibits of the prior hearing and on September 30, 1966, the Board granted the requested rezoning. The protesting neighbors appealed to the Circuit Court and Judge Melvin reversed the Board, saying:

> "In granting the present rezoning to a Maritime B classification, the Board found '[T]here has been shown a specific need for extension of the existing marine services to the property zoned Agricultural, on the North and South boundaries of the property zoned

Heavy Commercial.' Presumably this was an attempt to fit the rezoning under the category of legally permissible spot zoning. To do so there must be in the record evidence of such a change in the character of the neighborhood as to justify the reclassification."

This does not seem to have been an entirely precise statement of the law. In *Alvey v. Michaels,* 231 Md. 22, 27, which involved an Anne Arundel County marina, we said:

"As to the question that this would be spot zoning legally permissible under the circumstances, we have held that such is legal when there is a need for a service in the area for the accommodation and convenience of the residents of the residential zone, such as grocery stores, drug stores, barber shops, etc. *Temmink v. Board of Zoning Appeals,* 205 Md. 489, 495, 109 A. 2d 85. We do not find on the record that another marina within this area would come within this category. Such a departure from the surrounding zoning is only allowed where there is an absence or insufficient service of such facilities in the area."

The Board found, justifiably we think on the evidence before it, that there had been no mistake in the original zoning to heavy commercial, no change in the character of the neighborhood as far as commercial uses were concerned, but that since 1956 there had been a tremendous intensification of residential use in the neighborhood and a corresponding local growth in the ownership and use of boats as well as a similar growth in the County and State and that "there was evidence to prove need for extension of the subject facilities." The Board went on to find that:

"There is no dispute that the subject area has had a rapid residential growth, despite the presence of an existing marina facility in the immediate area.

"Maritime B District is a restrictive zoning classification, to meet a specific community need, and is proper zoning for this property. It is, in fact, a dezoning of the Heavy Commercial zoning to a more restric-

tive classification, and therefore, a protection to future residential growth against the establishment of various other uses permitted in a Heavy Commercial zone.

"There has been shown a specific need for extension of the existing marina services to the property zoned Agricultural, on the North and South boundaries of the property zoned Heavy Commercial."

After his reference to whether the rezoning was permissible or impermissible spot zoning, Judge Melvin went on to say (in reference to Eschinger's argument and the Board's finding that there was a need for "additional services and facilities") that:

"In this court's opinion the evidence in the case, at most, shows that the 1.44 acres presently zoned Heavy Commercial satisfies a need for docking and engine repair facilities for the residents of the area. The evidence is not sufficient, however, to warrant a finding that there is a need for additional rezoning to satisfy these needs."

Judge Melvin then analyzed the evidence at some length and drew inferences from it to support his conclusion. It appears to us that he substituted his judgment for that of the Board on evidence that, at the least, would permit a finding either way, and drew inferences from the evidence that were contrary to those reasonably drawn by the Board, despite the fact that the law confers upon the Board the primary duty of determining facts and drawing permissible inferences.

We choose to remand rather than reverse the case because the parties argued and the court decided the case without reference to the legal ground of the Board's decision. The Board rested its decision on the new maritime zones created in 1964, finding need, and compatibility with the surrounding area. ("There is no dispute that the subject area has had a rapid residential growth, despite the presence of an existing marina facility in the immediate area.") Judge Melvin, in considering legal versus illegal spot zoning, made his decision on the theory that Anne Arundel County had only the traditional Euclidean

zones dealt with in this context in *Cassel v. City of Baltimore,* 195 Md. 348, and *Alvey v. Michaels, supra.* The briefs of the parties in this Court dealt only with the mistake and change rule and spot zoning in the context of Euclidean zones, although Ch. 35 of the Code of Anne Arundel County, 1957 Ed. (as amended and so including the maritime zones) was in evidence.

There is much to indicate that the 1964 maritime zones are floating zones. The recitals of these enactments declare that the Planning Board:

> "is desirous of maintaining the Zoning Ordinance in a manner commensurate with the needs of a growing and dynamic metropolitan waterfront community * * * [and] the Board specifically finds the need for the establishment of maritime districts."
> * * *

The 1964 amendment did not change the official zoning map of the County, and did not place any property in the new category. Rather, the legislative plan created two new zones— Maritime District "A" and Maritime District "B", which could be superimposed on existing zones anywhere on the waterfront. The ordinance provides that:

> "Maritime Districts A are intended primarily for areas bordering the navigable waters of Anne Arundel County where facilities can be located for launching, mooring, storage of and making of light repairs to water craft not exceeding twenty-six feet in overall length * * *.
> * * *
> "Maritime Districts B are intended primarily for land bordering the navigable waters of Anne Arundel County where facilities for the sale, construction, repair, storage, launching, berthing, securing, fueling, and general servicing of water craft of all types, as well as accessory uses will be developed."

In each District there are minimum square feet area requirements, height limitations, requirements for paved and drained off-street parking areas sufficient to service a prescribed number

of cars, prohibitions against parking on nearby public roads and streets, set back requirements, required screening off of more restricted zones, lighting restrictions, and specified numbers of toilet and lavatory facilities, including showers, meeting health department standards.

Reno, *Non-Euclidean Zoning: The Use of the Floating Zone,* 23 Md. L. Rev. 105, 107 (1963), gives this description of a floating zone:

> "In recent years a new device in zoning has developed which provides the machinery for the establishment of small tracts for use as a shopping center, a garden apartment or a light industry in accordance with a comprehensive plan for the entire municipality, and at the same time leaves the exact location of each tract to be determined in the future as demand for a shopping center, a garden apartment or a light industry develops in a specific area. This device is the creation of special use districts for these various uses, which at the time are unlocated districts, but which can be located by a petition of a property owner desiring to develop his specific tract for any of these special uses. Such unlocated special zoning districts are popularly referred to as 'floating zones,' in that they float over the entire municipality until by application of a property owner one of these special use zones descends upon his land thereby reclassifying it for the special use. The zoning ordinance is carefully drawn so as to impose restrictive use limitations upon the owner in these special use zones in order to protect the adjoining residential areas. Usually there is a minimum lot requirement with large set-back restrictions for the structures, both from the streets and from the adjoining residences. Also in the case of light industry, limitations exist as to architecture of the buildings with requirements as to landscaping."

Professor Reno points out (pp. 118-19-20) that:

> "In both the *Rodgers* case [*Rodgers v. Village of Tarrytown,* 302 N. Y. 115, 96 N. E. 2d 731 (1951)]

and the *Huff* case [*Huff v. Bd. of Zoning Appeals,* 214 Md. 48] there was a complete system of established use districts covering the entire municipal area, with a single floating zone for a specialized use superimposed upon these established districts. * * * Thus, in both cases where the floating zone device was upheld, there existed a comprehensive zoning plan for the municipality to which the floating zone was merely a special exception applicable to the entire plan, analogous to special exceptions applicable to individual zones. This raises the question as to whether the legality of the floating zone device is dependent upon the existence of an established Euclidean zoning system over which the floating zone is superimposed. * * *

* * *

"From these cases we can conclude that the most liberal courts still interpret the zoning power to mean Euclidean zoning with the creation of established territorial use districts. The advent of the floating zone device creates a supplementary device similar to the special exception to give greater flexibility to the established use districts but cannot be used as a substitute for the accepted method of Euclidean zoning."

For amplifications of the concept of floating zones and recognition of their validity and applicability, see *Bigenho v. Montgomery County,* 248 Md. 386; *Tauber v. Montgomery County,* 244 Md. 332; *Beall v. Montgomery County,* 240 Md. 77; *Costello v. Sieling,* 223 Md. 24; *Huff v. Bd. of Zoning Appeals,* 214 Md. 48.

The Maritime Districts of Anne Arundel County would seem to fit the descriptions of floating zones given by Professor Reno and the cases cited. Upon remand the Circuit Court for Anne Arundel County will consider in the context of the zoning ordinance of the County as a whole, and determine the meaning and effect of the Maritime Districts zoning ordinance in relation to whether the reclassification of the Eschinger property was or was not permissible spot zoning as a floating zone. In this

connection it will be desirable and perhaps necessary to consider the provision of the County Charter, 2 Anne Arundel County Code (1957), Appendix A, Sec. 535 (a) that the Zoning Hearing Officer:

> "shall grant or deny [after conducting a public hearing] such reclassification in accordance with appropriate zoning regulations, but no reclassification shall be granted by the Zoning Hearing Officer except on the basis of an affirmative finding that there was a mistake in the zoning map or that the character of the neighborhood be changed to such an extent that the zoning map should be changed,"

first in relation to the following paragraph reading:

> "(b) *Other authority of zoning hearing officer.* Subject to appropriate principles, standards, rules, conditions and safeguards set forth therein, the Zoning Hearing Officer may grant variances from and make special exceptions to the zoning laws, regulations, ordinances or resolutions,"

and further in relation to Sec. 602 (a) of the Charter authorizing the Board of Appeals to hear appeals from the action of the Hearing Officer on reclassifications, variances and special exceptions *de novo,* with no requirement that mistake or change must be found as a basis of rezoning.

> *Case remanded, without affirmance or reversal, costs to abide the ultimate result.*