HALDEMANN *v.* BOARD OF COUNTY COMMISSIONERS OF HOWARD COUNTY, ET AL.

[No. 215, September Term, 1968.]

*Decided May 1, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, McWILLIAMS, FINAN and SINGLEY, JJ.

*James S. Ansell* for appellant.

*Charles E. Hogg,* with whom was *Thomas E. Lloyd* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

Mr. and Mrs. Samuel M. Pistorio (the Pistorios) are the owners of a tract of some 154 acres in Howard County which lies in the southeast quadrant of the U. S. Route 29—Interstate 70-N interchange. The property is bounded on the north by Route 70-N, on the west by Route 29, on the south and southeast by garden-type apartments, and on the east has a frontage of some 250 feet on Rogers Avenue, Maryland Route 99. The Pistorios, as permitted by § 14.25 of the Zoning Regulations of Howard County (4th Ed. 1968)[1] filed a petition with the Zoning Commissioner of Howard County for the reclassification

---

1.  14.25  PROCEDURE FOR CREATING M-R DISTRICTS

    14.251  M-R Districts may be created by petition to the County Commissioners of Howard County for an amendment to the zoning map in accordance with the procedures set forth in Section 33 of these regulations.

    14.252  A petition for creating such an M-R District shall be filed with the Zoning Commissioner. It shall be accompanied by three or more copies of complete pre-

of the tract from an R-20 District (one and two family detached residences, minimum lot size 20,000 square feet) to an M-R District (manufacturing, restricted).

The Zoning Commissioner transmitted the petition to the Planning Commission, as provided by §§ 14.252 and 33.02 of

liminary development plans showing existing topography, proposed grading, drainage, screening, planting, extent, general location and character of proposed structures, uses and open area, ingress and egress. A copy of such preliminary development plan shall be transmitted by the Zoning Commissioner to the Planning Commission and the Metropolitan Commission of Howard County for recommendation and report on the proposed project to the County Commissioners.

14.253 After a public hearing on the proposed plan, the County Commissioners shall pass their order of disapproval, approval, or approval with conditions incorporated therein. Any approval hereunder shall contain a specific requirement that buildings and ground continue to be so maintained that they will not adversely affect vicinal properties. Failure to comply with this requirement may be grounds for reclassification of such property by the proper authority after notice and public hearing. All uses of any property zoned M-R District must be in compliance with an approved development plan.

14.254 A final development plan showing the design and layout, ingress and egress, storm drainage and public water and sewerage facilities shall be submitted to the Planning Commission, the Metropolitan Commission and the Health Department of Howard County. The site plan shall have final approval of the above commissions and departments and other interested public departments before any construction is started within the project area.

14.255 No building permit shall be issued in any M-R District for a building which does not comply with the approved final development plan. If such an approved development plan has not been utilized within a period of five years from the date of its final approval, it shall be void unless on written request from the petitioner or owner, the County Commissioners after receiving a recommendation and report from the Planning Commission, grant an extension, provided, however, that not more than two such extensions for a period of one year each may be granted.

the Regulations, and the Commission recommended denial if action was to be taken prior to 1 June 1968, since the Commission proposed to draft a master plan for the area by that date. On 15 February 1968, after formal hearing, the Board of County Commissioners (the Board) granted the reclassification. Haldemann, one of those who had opposed the rezoning before the Board, sought a declaration [2] from the Circuit Court for Howard County, sitting in equity, that the action of the Commissioners was "* * * illegal, discriminatory, arbitrary and capricious," and therefore null and void. The Pistorios, on motion, were permitted to intervene and answered. From a decree dismissing the bill of complaint, this appeal was taken.

Haldemann contends first, that the lower court erred when it treated the M-R classification as if it were a non-Euclidean or floating zone, thus relieving the Pistorios of the necessity of showing that there had been a mistake in the original zoning or a change in the character of the neighborhood. Haldemann's second contention is that, regardless of whether an M-R zone is or is not a floating zone, the lower court erred in holding that the issue was fairly debatable and that the result involved no abuse of discretion by the Board. We think that this challenge must fail, and we will affirm the dismissal of Haldemann's bill.

More than a decade ago, this Court in *Huff v. Bd. of Zoning Appeals,* 214 Md. 48, 133 A. 2d 83 (1957) gave approval to the floating zone concept, by upholding that part of the zoning regulations adopted in 1955 by the County Commissioners of Baltimore County, which provided for the reclassification of tracts of not less than five acres as "manufacturing, restricted"; specified the procedure to be followed in creating M-R zones; detailed the permitted uses, and imposed certain limitations on development. *See* Baltimore County Zoning Regulations (2d Ed. 1964) § 240. On 16 May 1961, the County Commissioners of Howard County adopted zoning regulations for that county. § 14 of those regulations deals with M-R Districts. The statement of purpose is almost identical with that in the Baltimore

---

2. At the time of trial, there was no statutory appeal in Howard County from a zoning decision of the Board. *Board of County Comm'rs of Howard County v. Turf Valley Associates,* 247 Md. 556 at 559, 233 A. 2d 753 (1967).

County regulations; the permitted uses, quite similar; the limitations on development, more detailed. As the lower court observed, the Howard County regulations were "drafted carefully in the light of *Huff v. Bd. of Zoning Appeals.*"

We think that *Huff, supra,* is clearly determinative of Haldemann's first contention. *See also, Hunter v. Bd. of County Comm'rs for Carroll County,* 252 Md. 305, 250 A. 2d 81 (1969); *Eschinger v. Bus,* 250 Md. 112, 242 A. 2d 502 (1968); *Bigenho v. Montgomery County Council,* 248 Md. 386, 237 A. 2d 53 (1968); *Kramer v. Bd. of County Comm'rs for Prince George's County,* 248 Md. 27, 234 A. 2d 589 (1967); *Beall v. Montgomery County Council,* 240 Md. 77, 212 A. 2d 751 (1965); *Costello v. Sieling,* 223 Md. 24, 161 A. 2d 824 (1960). We have no hesitancy in holding that Howard County's M-R District, like Baltimore County's, is a non-Euclidean or floating zone to which the "change-mistake" rule does not apply.

With respect to Haldemann's second contention, we agree with the lower court's conclusion that the question presented to the Board was fairly debatable and that there was no abuse of discretion. The Howard County Planning Commission, to which the application was referred for a report and recommendation, recommended that the application be denied if action were taken on it before 1 June 1968. Its report to the Board reached the following conclusions:

"1. The petitioner's request is not in accordance with the General Plan of Howard County, adopted July 20, 1960.
2. The subject property will only have one point of access, either existing Rogers Avenue or relocated Rogers Avenue, which will probably not be constructed until after 1976.
3. The requirements set forth in Section 14.252 should be shown clearly on the preliminary development plan, especially for screenings and planting.
4. There are 37 acres of M-R zoned land within 6,000 feet of the subject property which are undeveloped.

5. The Planning Commission believes that the M-R request is premature and that the Board of County Commissioners should defer action until June 1, 1968, so that the Planning Commission can prepare a Master Plan [3] for the Second Election District which would include a specific proposal for an improved circulation system for this area. The proposed 154-acre M-R District needs an additional vehicle access to either Route 99 or Route 40 without funnelling traffic through the apartment area."

On 4 January 1968, the Pistorios' application was the subject of a public hearing before the Board. Six neighborhood groups and a number of individuals, including Haldemann, appeared as protestants. The protestants produced two expert witnesses, Eugene J. Clifford, a traffic engineer and Arthur L. Hundermark, a realtor. Mr. Clifford testified that Rogers Avenue, which provides the only access to the Pistorio tract, has an average width of only 24 feet; that as presently laid out, it has a peak capacity of 850 cars per hour; that present peak volume is 300 cars per hour; and that it was his opinion that the Pistorio tract, when fully developed, would add 900 cars per hour during peak periods. There was also testimony at the hearing that the relocation and widening of Rogers Avenue was projected but had not been scheduled by the State Roads Commission. Mr. Hundermark testified that the granting of the application would cause a depreciation in the value of the private residences on Rogers Avenue. Campbell V. Helfrich, who testified for the Pistorios, maintained that any possible depreciation would be obviated by the relocation of Rogers Avenue.

On 15 February 1968, the Board adopted a resolution granting the requested reclassification and made the following findings of fact:

"1. That there exists a need for a M-R District in the area of the subject property.
2. That the industrial development of the subject

---

**3.** As indicated in the lower court's opinion, *infra,* the Master Plan had not been prepared by 18 July 1968.

property as a complete unit and according to the requirements of the M-R District in the Zoning Regulations will benefit the general public and will promote the general economic welfare of the community.

3. That substantial changes in the character of the neighborhood have occurred since the adoption of the comprehensive Zoning Map, especially the construction of the dual highways with large median strips and wide rights-of-way which surround and isolate the subject property on two sides.

4. That the reclassification of the subject property to a M-R District is in harmony with the Howard County General Plan.

5. That the reclassification of the subject property to a M-R District is not incompatible with nor inconsistent with the uses of the surrounding properties.

6. That the reclassification of the subject property from R-20 to M-R District will not adversely affect the surrounding properties, considering, among other things, the time required for full development and the scheduled relocation and improvement of Rogers Avenue."

The court below (Macgill, J.) reviewed the Board's action, and said:

"* * * The potential increase in the volume of traffic on Rogers Avenue is, perhaps the most telling point made by the opponents of the reclassification. A traffic expert testified on behalf of the opponents that Rogers Avenue had a present traffic capacity of some eight hundred and fifty vehicles per hour and he estimated that the proposed industrial park would lead, during the peak hour, to something in excess of twelve hundred vehicles per hour. It was the opinion of the witness, therefore, that the proposed reclassification would lead to traffic congestion on this particular road. Certainly, the Board, in establishing zoning districts, was required to consider 'traffic problems and their relation

to the public safety and welfare'. Section 2. (a) of the Zoning Regulations. By (1) of the same section, however, the Board was also to take into consideration 'The road building and road widening plans of the State and County'. There was evidence before the Board that a relocation and dualization of Rogers Avenue was planned by the State Roads Commission but that no action on this plan was anticipated prior to 1970, at least. In this connection, the Board was entitled to consider, and evidently did consider, the probability that the full development of the 'industrial park',[4] which would cause the estimated volume of traffic, would be a process approximately as gradual as the development of the projected road.

"It is true that in *Hardesty v. Board of Zoning Appeals of Baltimore County,* 211 Md. 172 [126 A. 2d 621] (1956), and *Temmink v. Board of Zoning Appeals of Baltimore County,* 212 Md. 6 [128 A. 2d 256] (1956), it was held that where the evidence showed that the reclassifications would create congestion in the access streets, the action of the Board in granting the reclassifications was arbitrary. It was pointed out in both of these cases, however, that there was no evidence that the widening of the public highways in the vicinity of the properties in question was contemplated. In *St. Mark's Church v. Doub,* 219 Md. 387 [149 A. 2d 779] (1959), it was said that traffic volume should not be confused with traffic congestion and that the increase in traffic volume which might result from a reclassification was not, in itself, grounds for denying the application. It may be assumed that when traffic volume exceeds a certain limit, it is transformed into traffic congestion. In the instant case, the Board, as has been observed, appeared to have considered this possibility along with the proposed widening or dual-

---

4. The chancellor characterized the term as an oxymoron "akin to 'whisper jets' which presages '1984' " and refers us to Herbert Marcuse, "The One-Dimensional Man" (1964).

ization of the access road and this Court finds itself unable to say, on the evidence, that its action in this respect was arbitrary or capricious. *Nelson v. Montgomery County*, 214 Md. 587 [136 A. 2d 373] (1957); *Muhly v. County Council*, 218 Md. 543 [147 A. 2d 735] (1958) and *Missouri Realty, Inc. v. Ramer*, 216 Md. 442, 451 [140 A. 2d 655] (1958).

"The Planning Commission took a position on the application somewhat similar to that described as having been taken by the Planning Commission for Montgomery County in *Nelson v. Montgomery County, supra,* that is, it stated that the application was 'premature' and that action should be deferred until June 1, 1968, pending the preparation of a 'Master Plan' for the Second Election District. There has been no suggestion, one way or the other, that such a plan has been prepared as of this time. The recommendation of the Planning Commission was, of course, not binding on the Board of County Commissioners. Cf. *Baylis v. City of Baltimore,* 219 Md. 164 [148 A. 2d 429] (1958), and *Pressman v. City of Baltimore,* 222 Md. 330 [160 A. 2d 379] (1960)."

We adopt the chancellor's conclusion that the action of the Board of County Commissioners was, at least, fairly debatable. We have often repeated the principles here applicable: courts have no power to rezone and may not substitute their judgment for that of the expertise of the zoning authority. *Kirkman v. Montgomery County Council,* 251 Md. 273, 247 A. 2d 255 (1968); *Bosley v. Hospital for Consumptives,* 246 Md. 197, 227 A. 2d 746 (1967); *Board of County Comm'rs for Prince George's County v. Farr,* 242 Md. 315, 218 A. 2d 923 (1966). It has long been settled that the zoning authority's determination is correct if there were such legally sufficient evidence as would make the question fairly debatable. *Ark Readi-Mix Concrete Corp. v. Smith,* 251 Md. 1, 246 A. 2d 220 (1968); *Mayor & City Council of Greenbelt v. Bd. of County Comm'rs for Prince George's County,* 247 Md. 670, 234 A. 2d 140 (1967); *Agneslane, Inc. v. Lucas,* 247 Md. 612, 233 A. 2d 757 (1967).

Further, the one who attacks the determination made by the authority must show that it was arbitrary, unreasonable or capricious. *Kirkman v. Mongomery County Council, supra; Agneslane, Inc. v. Lucas, supra; Bosley v. Hospital for Consumptives, supra; Mayor & City Council of Balto. v. Sapero,* 230 Md. 291, 186 A. 2d 884 (1962). The appellant's proof falls short of establishing that the Board abused the discretion vested in it by law.

*Decree affirmed; costs to be paid by appellant.*