## DORF *v.* MULLENDORE, ET AL.

[No. 410, September Term, 1968.]

*Decided November 4, 1969.*

368

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Richard D. Rosenthal,* with whom were *Frank B. Cahn, II* and *Pollack, Cahn & Rosenthal* on the brief, for appellant.

*George W. White, Jr.* and *Philip O. Foard,* with whom were *Buckmaster, White, Mindel & Clarke* on the brief, for appellees.

McWILLIAMS, J., delivered the opinion of the Court.

In 1953 Dr. Dorf acquired, for $23,000, the improved lot at the northeast corner of Liberty and Croydon Roads in suburban Baltimore County. The area was then and is now known as Milford. Within a year he bought, for $8,000, the unimproved lot adjoining his property to the east upon which he built, at a cost of about $14,000, an office in which he carried on the practice of medicine. The house and the office were connected by a breezeway which seems to have satisfied a regulation requiring professional offices to be a part of a residence. Since 1954 the boundaries of his property have been Liberty Road (300 feet), Croydon Road (150 feet), Buckingham Road

(150 feet), and a line (300 feet) parallel to and 150 feet back from Liberty Road. In 1953, when he bought the first lot, there was on the southeast corner of Liberty Road, then 22 feet wide, and Croydon Road a "little country store" in front of which was a gasoline pump. In 1955 the Crest Shopping Center was built on vacant land on the south side of Liberty Road directly across from Dr. Dorf's property. All hands agree that Milford was and still is a "fine, old residential area" and that Dr. Dorf's property is still suitable for the practice of medicine.

In 1961 the Planning Board of Baltimore County recommended, for the Western Planning Area, the use of the R.A. (Residential Apartment) zone as a buffer strip "between commercial and cottage residential land uses." It went on to say that the R.A. zone should "be placed on unsubdivided land or land improved with dwellings, either across the street from existing commercial development (facing commercial) or adjacent thereto (siding on commercial)." In the supplement to its report the R.A. classification was recommended for Dr. Dorf's property. On 11 July 1961 the county council held a hearing on the proposed zoning map for the Western Planning Area. Counsel for Dr. Dorf appeared and opposed the R.A. classification, urging a reclassification to B.L. (Business Local) and stressing the fact that "the property faces directly onto a Sinclair Station * * * [adjacent to which] is an A & P, a drugstore and a small shopping center." Reference was made, also, to the fact that the Beltway interchange was "within a block or so" and that Liberty Road "according to the State Roads Commission has a car capacity of about 21,500 vehicles over a 24-hour period," and that it is "heavily travelled." The right-of-way, at the time, was 66 feet wide. Later on 60 of the 66 feet were paved. Apparently the request for a B.L. classification was dimly viewed. On 3 October 1961, the county council, by a unanimous vote rejected the proposed R.A. zoning and classified the property R.10 (Residential-One Family). The comprehensive

zoning map was adopted by the county council on 15 November 1962.

Three months later, in February 1963, Dr. Dorf sought to have his property changed from the R.10 classification to the B.L. classification, for a small shopping center, on the single ground of error in the comprehensive rezoning of November 1962. Upon the denial of his request by the Zoning Commissioner he appealed to the Board of Appeals which heard testimony on 10 March 1964. On 20 October 1964 the appeal was dismissed, *with prejudice*, at the request of Dr. Dorf.

In March 1966 Dr. Dorf again sought a reclassification to B.L. for a filling station. The petition was withdrawn; the order of dismissal was entered on 10 April 1966.

On 9 May 1967 Dr. Dorf filed a petition for the reclassification of his property from R.10 to R.A. with a special exception for offices. The Zoning Commissioner granted the reclassification and the special exception on 27 September 1967. On 27 June 1968 a divided Board of Appeals affirmed the action of the Zoning Commissioner. On 31 December 1968, the trial judge, Raine, J., reversed the action of the Board of Appeals. In his opinion he said:

> "The applicable principles are so well established that they need be repeated only briefly, and citation of cases is unnecessary. The court cannot substitute its judgment for that of the zoning authorities, but where a comprehensive land use map is adopted it must not be changed on a piece-meal basis unless a change is dictated by a finding that the neighborhood in question has changed its character, or a finding that there was an error or mistake when a particular property was placed in a particular zoning classification. These findings must be supported by some credible and probative evidence. The only change in the area since the adoption of the map in 1962 is the completion of a long awaited

project, to wit, the widening of Liberty Road. This arterial highway was widened from 22 feet to 60 feet, and additional traffic lights have been installed. This improvement in traffic conditions has not changed the essential character of the area in which the subject property is located, and the mere widening of the highway cannot, in itself, be considered a change that would justify a reclassification. The Board of Appeals seems to have predicated its decision on a finding that the present R-10 classification deprives the owner of any reasonable use of his property, and that therefore error was committed by the County Council in 1962. Examination of the Exhibits and the testimony discloses that the physician who owns the property resides in the same and conducts his medical practice there. Obviously he can sell it for more money if he can build a three story apartment or office building, but to contend that he is deprived of any reasonable use of the property is arrant nonsense. In this area Liberty Road serves as a natural and proper barrier between commercial and residential properties. Examination of the comprehensive map shows clearly that this would be spot zoning, and an unwarranted intrusion into the purely residential area."

In light of Judge Raine's pithy statement and what we have said so very recently in cases not very much unlike the instant case, we do not see what useful purpose could possibly be served by further exercitation. *See County Comm'rs v. Phillips,* 255 Md. 229 (1969) and the cases therein cited; *Bowie v. County Comm'rs,* 253 Md. 602 (1969); *Wells v. Pierpont,* 253 Md. 554 (1969); *Goucher College v. DeWolfe,* 251 Md. 638 (1968); *Randolph Hills, Inc. v. Whitley,* 249 Md. 78 (1968).

*Order affirmed.*
*Costs to be paid by appellant.*