MESSENGER ET AL. *v.* BOARD OF COUNTY COMMISSIONERS FOR PRINCE GEORGE'S COUNTY

[No. 93, September Term, 1970.]

*Decided November 18, 1970.*

694

The cause was argued before HAMMOND, C. J., and. BARNES, FINAN, SINGLEY and DIGGES, JJ.

*Donald B. W. Messenger* for appellants.

*Albert J. Lochte, Associate County Attorney,* with. whom were *Lionell M. Lockhart, County Attorney,* and. *Harry L. Durity, Deputy County Attorney,* on the brief,. for appellee.

BARNES, J., delivered the opinion of the Court.

The appeal in this zoning case from an order of December 24, 1969, of the Circuit Court for Prince George's County (McCullough, J.) affirming the action of the Board of County Commissioners for Prince George's County, sitting as a District Council (District Council) in denying the application of Donald B. W. Messenger et al., the appellants, to rezone their property in Upper Marlboro, Prince George's County from the R-R to the C-O (Commercial Office Building) zone, presents three principal questions for our consideration. These three questions are whether or not the Circuit Court erred (1) in not finding that the action of the District Council was unreasonable, arbitrary, capricious and discriminatory; (2) in not concluding that the District Council had not set forth the findings of fact and conclusions required by the Prince George's County Zoning Ordinance; and, (3) in finding it proper for the District Council to refuse to consider the conditional aspects of the zoning of the subject property until the applicants had established a prima facie case under the Maryland "change-mistake" rule.

We have concluded that the Circuit Court did not err in regard to any of these matters and we shall affirm the order of December 24, 1969.

The subject property is located at the northeast corner of the intersection of Main Street and the Old Marlboro Pike (Maryland Route 408) in the Town of Upper Marlboro at a distance of approximately 1,000 feet west of the Prince George's County Court House. It is basically rectangular in shape with a frontage along the center line of Main Street of 134.07 feet as its southern boundary, a frontage along Old Marlboro Pike of 147.97 feet as its western boundary and a frontage along Service Lane (20 feet wide) of 153.52 feet as its northern boundary. To the east the subject property adjoins property improved and used for single-family residential purposes. It contains 0.561 of an acre and has water, sewer, electric and

telephone services available and connected to the older styled frame dwelling near the center of the site.

The subject property is zoned R-R (Rural-Residential, single-family use with a minimum lot size of 15,000 square feet) and is surrounded by land either zoned R-R or R-80 (single-family use with a minimum lot size of 8,000 square feet). Across Service Lane to the north there is a lot zoned R-80 improved with a single-family dwelling and used for that purpose. Across Old Marlboro Pike to the west the land is vacant, wooded and zoned R-80. To the south of the subject property, diagonally across the intersection of Main Street, Old Marlboro Pike and Church Street, is a former telephone company building now converted to, and currently used as, a computer center by the County government. Two lots removed from the subject property to the east, there is land zoned C-1 (local commercial) which is currently used by retail businesses.

To the east of Water Street between the School House property to the north and Western Branch to the south and east, the land is generally used for commercial purposes. Some areas are zoned C-O. The land lying west of Water Street for 400 feet between Service Lane on the north and a line approximately 200 feet north of Western Branch on the south is zoned generally R-18 (multiple-family, medium density residential) or C-1 (local commercial). To the south of Church Street, some 500 feet southeasterly from the subject property, there is a parcel of land zoned C-O, by application A-6730. To the east of Water Street a parcel of land has recently been rezoned C-O and acquired by Prince George's County as an additional parking area for the Court House. On June 6, 1969, the District Council, upon Application A-7560, rezoned the "Junkin Property" on the south side of Main Street, located in part west of the westerly division line some 400 feet west of Water Street, between the R-R and other zoning mentioned above. This rectangular parcel has a frontage of approximately 200 feet on Main Street with a depth of approximately 175 feet. It is ap-

proximately 150 feet from the easterly boundary of the subject property across Main Street.

The application involving the subject property (No. A-7845) was in due course reviewed by the Technical Staff of The Maryland-National Capital Park and Planning Commission (Planning Commission). The Technical Staff filed its report on January 17, 1969, recommending approval for C-O rezoning of 0.326 acre of 0.561 acre, 0.235 acre having been deducted for a right-of-way to provide, in part, for a 60 foot right-of-way for Main Street and an 80 foot right-of-way for Old Marlboro Pike. After pointing out that the 1964 General Plan for the area recommended residential development of a density of from 3 to 10 dwelling units per acre, the Technical Staff stated that it had approved C-O zoning requests in the area because of the "ever-increasing need for commercial office facilities in close proximity to the County Court House (some 900 feet east of the subject property)." In addition to this governmental use, the Report stated that the general residential growth around Upper Marlboro was "creating a demand for expansion of commercial and professional services" and because of physical limitation of sites for such expansion by School House Pond to the north and Western Branch to the south, the "area surrounding the subject property is the only physical direction for logical and economic expansion." The Report further stated that there was sufficient lot area on the subject property to make possible the provision for adequate off-street parking in accordance with the requirements of the Zoning Ordinance.

The Planning Commission, on February 19, 1969, recommended to the District Council that 0.326 acre be rezoned C-O with a reservation of 0.235 acre withheld for right-of-way purposes mentioned in the Report of the Technical Staff, but that this approval be made subject to the following *conditions*:

"1. That the existing structure be renovated in

accordance with the Marlboro Architectural Design Ordinance.
2. That the existing landscape be retained.
3. Site Plan approval by the Prince George's Planning Board."

The Planning Commission stated the three following reasons for its recommendations:

"1. There is a need for additional C-O Zoning in this area.
2. Commercial-office use would be compatible with the existing structure and with existing zoning and land use.
3. C-O Zoning and use would not have an adverse affect on adjacent properties."

At the hearing before the District Council on May 7, 1969, the applicants produced a well-qualified real estate broker and appraiser who, after reviewing the zoning in the general area and the need, in his opinion, of additional C-O zoning, stated that he was of the opinion that there had been a substantial change in the zoning and land use and that the proposed C-O use was a logical extension of commercial zoning which would not result in any monetary damage to any adjoining properties. On cross-examination, the expert admitted that certain properties, already in commercial classifications, were not being used and some were for sale.

One of the applicants testified that the applicants were willing to accept any reasonable conditions and that he had spoken to some of the residents of the Upper Marlboro area. He stated that "the predominant view was in favor of our application," some, however, taking a neutral position. The persons to whom he spoke were "businessmen primarily."

Petitions with lists of residents approving the application were introduced, as were Petitions of residents opposing the application. Several zoning maps and the

recommendation of the Planning Commission were put into evidence.

The Town of Upper Marlboro has an ordinance for the protection and preservation of the architectural integrity of the Town. Neither the Town nor the Civic Association objected to the application in the present case.

Several neighboring property owners testified in opposition to the granting of the application. The owner of the residential property located immediately to the north of the subject property across Service Lane offered testimony that the subject property is located in an established residential area which has been such since the town was laid out in the 1600's. The proposed commercial-office use would be incompatible with the use of adjacent property and nearby residential homes. The original zoning for residential use was correct and there has been no change in the character of the neighborhood since 1962 when the comprehensive zoning map was adopted. In the opinion of the witness the use of the subject property for commercial offices would have an adverse effect upon the adjacent and nearby residential properties. The subject property is suitable for use as a residence and several people bid on it the day it was sold who wanted to live in the residence now on the property. A substantial amount of land in downtown Marlboro is already zoned commercial and is for sale. Such land includes the former Masonic Hall lot on Main Street, a vacant lot on Main Street across from the Court House, a vacant lot next to the Parish Hall of Trinity Episcopal Church.

One of the owners of the residential property adjoining the subject property to the east testified that she and her sister were opposed to the granting of the application; that they had purchased their property for a house because there were two attractive homes on either side of it; and, that the proposed commercial use would detract from the use of their property as a home.

A number of photographs showing the subject property and immediately surrounding area were introduced into evidence. They indicate that the immediate area is

700

used for single-family residential purposes, with large homes and well landscaped yards. The protestants also introduced a set of 10 photographs showing a number of available but unused commercial properties in Upper Marlboro.

On June 4, 1969, the District Council disapproved the application and made the following findings:

"1. The applicant's property is presently in the R-R (Rural Residential) classification, and has been since the adoption of the Zoning Map for the area and since the adoption of the general plan.

"2. The property is improved by a single family home and garage.

"3. The property is bounded at the south by Main Street, at the west by Maryland Route 408, at the north by a service lane and at the east by property owned by Susanne and Mazie Hall.

"4. The properties closest to applicant's on all sides are in the R-R Zone which zone predominates the immediate surrounding area.[1]

"5. The closest commercial property is located to the southeast, abuts the major commercial area of Marlboro, and is the western limit of the commercial area. This property was rezoned under Application No. A-7560.

"6. There are two parcels of land in the R-R Zone between the subject property and any commercial zone to the north of Main Street. These are improved by dwellings and are presently occupied."

The conclusions of the District Council were as follows:

"1. That there is readily available in the busi-

1. This statement appears to be inaccurate, in part, in that the Zoning Map indicates that the land lying to the north of the subject property is zoned *R-80* rather than *R-R*, as is the land lying to the west across Maryland Route 408. The point is, however, that the surrounding property is in a *residential zone* and this type of zoning *does predominate* in the immediate surrounding area.

ness district of Upper Marlboro numerous commercially zoned properties, many of which have improvements upon them that are not being used.

"2. The area of the subject property still reflects a rural-residential character, notwithstanding the incongruous presence of C-O use to the southeast of the subject property.

"3. There is no impediment to preclude single-family residential use of the subject property.

"4. Approval of the application would tend to promote a profound change in the character of the area by jeopardizing the adjacent land to the east.

"5. That applicant has not met the burden of proof as to showing a mistake in the Master Plan nor that there has been substantial change in the area which would justify rezoning of the subject property to the C-O classification."

Upon appeal by the applicants to the Circuit Court, the action of the District Council was affirmed, the lower court being of the opinion that the action of the District Council was not "arbitrary, capricious, unreasonable, discriminatory or beyond statutory or constitutional limitations."

### (1)

The applicants earnestly argue that the action of the District Council in rezoning the Junkin property, 3917 Main Street, Upper Marlboro, from the R-R to C-O zone on June 8, 1968, with findings that there had been a substantial change in the character of the area; that there was a need for additional C-O zoning in the area; that a commercial-office use was compatible with the structures as well as with the existing zoning and land use; and, that the C-O zoning and use would not have an adverse effect on adjacent properties, was inconsistent with the action of the District Council some 10 months later in denying the application for rezoning the subject prop-

erty from R-R to C-O and with the findings and conclu-sions of the District Council in the instant case. Hence, the appellants say, the District Council's action, findings. and conclusions are arbitrary, unreasonable, capricious. and discriminatory inasmuch as the subject property is only approximately 150 feet west of the Junkin property on Main Street. We do not agree with this contention.

There are significant differences between the applica-tion for the rezoning of the Junkin property and the ap-plication for the rezoning of the subject property. First, and most importantly, the Junkin property abuts a C-1 (local commercial) zone on its east side. Secondly, the Junkin property is separated by Main Street from the two single-family dwellings immediately across Main Street to the north. Thirdly, there is no showing that the alleged "need" for additional C-O zoning was the same when the Junkin application was granted as it was when the present application was denied. In short, the action of the District Council in the Junkin application was un-der different factual circumstances than those presented at the hearing on the application in the present case.

In our opinion, there was sufficient evidence to sup-port the findings of the District Council in the present case. The evidence of the protestants, already set forth, indicates that at the time of the hearing in the present case no "need" for additional C-O zoning existed and that the area of the subject property did still "reflect a rural-residential character notwithstanding the incongruous C-O use to the southeast of the subject property" [the Junkin property]. There was evidence that the single-family dwelling on the subject property could be used as such; and, indeed, there is no contention in the present case that the continuance of the residential zoning is con-fiscatory or deprives the owners of all reasonable use of the subject property. The District Council also concluded that the granting of the application in the instant case would "tend to promote a profound change in the char-acter of the area by jeopardizing the adjacent land to the east." There was evidence by the protestants to support

this finding. The District Council's final conclusion was that the applicants had not met the burden of proving a mistake in original zoning or that there had been a substantial change in the character of the neighborhood which would justify the requested rezoning. The examination of the record indicates that there was evidence to support this conclusion, and being fairly debatable, we should not substitute our judgment for that of the District Council. *Dorf v. Mullendore*, 255 Md. 367, 258 A. 2d 223 (1969); *Bonnie View Country Club, Inc. v. Glass*, 242 Md. 46, 217 A. 2d 647 (1966) and *Jobar Corp. v. Rodgers Forge Community Ass'n*, 236 Md. 106, 202 A. 2d 612 (1964).

The drawing of the line between zones is a function of the legislative body and the fact that the legislative body has rezoned an adjoining or nearby property does not *require it to rezone* the property under consideration. See *Board of County Commissioners for Prince George's County v. Farr*, 242 Md. 315, 218 A. 2d 923 (1966). In *Farr*, Judge Oppenheimer, for the Court, stated:

> "In *County Council for Montgomery County v. Gendleman*, 227 Md. 491, 498, 177 A. 2d 687, 690 (1962), Chief Judge Brune, for the Court, stated the principle which we find to be applicable to the present case, as follows: 'Even if there were facts which would have justified the Council in rezoning the property, this would not of itself prove the denial of rezoning illegal. There is still the area of debatability, and one who attacks the refusal of rezoning must meet the heavy burden of proving that the action of the legislative body in refusing it was arbitrary, capricious or illegal.' Chief Judge Brune said, further: 'Zoning and rezoning do require the drawing of lines, and the legislative body may draw them subject to the same limitations as are applicable to other phases of the zoning process.' It was held in that case that, on the rec-

ord before the Council, its action in refusing to rezone the property involved was not beyond the field in which its action was fairly debatable. The Council 'was not bound to extend that classification [commercial-office use] beyond the lot at which it had elected to stop.' "
(242 Md. at 321, 218 A. 2d at 926.)

Even if an applicant meets his burden of proving that there was a mistake in the original comprehensive zoning or that changes have occurred in the neighborhood causing a change in the character of the neighborhood, this merely *permits* the legislative body to grant the requested rezoning but does not *require* it to do so. *Bauserman v. Barnett*, 257 Md. 258, 262 A. 2d 521 (1970); *Montgomery County Council v. Kacur*, 253 Md. 220, 252 A. 2d 832 (1969); *Franklin Construction Co. v. Welch*, 251 Md. 715, 248 A. 2d 639 (1968); and *Montgomery County Council v. Shiental*, 249 Md. 194, 238 A. 2d 912 (1968).

We have also held that the legislative body is not bound to follow the recommendations of its planning or zoning officials, even though such recommendations, if based on proper facts and reasons, are sufficient to make an issue fairly debatable. *County Council for Montgomery County v. Gendleman*, 227 Md. 491, 177 A. 2d 687 (1962).

In the present case, there is no contention that the original residential zoning for the subject property was a mistake. The present use of the subject property is in accordance with that original zoning and there was sufficient evidence to justify the District Council in refusing to change this zoning.

## (2)

The appellants next contend that the District Council did not set forth the findings of fact and conclusions required by the Prince George's County Zoning Ordinance. They rely upon our decision in *Montgomery v. Board of County Commissioners for Prince George's County*, 256

Md. 597, 261 A. 2d 447 (1970). In our opinion, this reliance is misplaced. In *Montgomery,* the Technical Staff and the Planning Commission had both recommended to the District Council the rezoning from R-R to C-2 (general commercial) of a 2.2 acre tract of land in Prince George's County. The District Council had *granted* the requested rezoning and its action was affirmed by the Circuit Court for Prince George's County, after declining to remand the case to the District Council to make findings of fact and conclusions of law. The applicable law in Prince George's County provides in relevant part:

> " '59-104. In Prince George's County, no application for a map amendment or special exception, which is contested, shall be granted or denied except upon written findings of basic facts and written conclusions.' "

We reversed the order of the Circuit Court and remanded the case to the lower court for further remand to the District Council to make the required findings of "basic facts" and "conclusions" stating:

> "Inasmuch as there is no contention in the present case that there was a mistake in the original zoning, it was necessary that the applicants establish before the District Council (a) what area reasonably constituted the 'neighborhood' of the subject property, (b) the changes which have occurred in that neighborhood since the comprehensive rezoning and (c) that these changes resulted in a change in the character of the neighborhood. These are the 'basic facts' and 'conclusions' which the District Council must find and express in writing when it grants or denies a map amendment or special exception." (256 Md. at 602, 261 A. 2d at 450.)

The appellants argue that in the present case the District Council did not make the findings we indicated must

be made in *Montgomery* and hence the action of the District Council violates the provisions of the Prince George's County Code already above set forth. This contention overlooks the basic difference between the *Montgomery* case and the case at Bar. In *Montgomery* the District Council *granted* the requested rezoning and the three "basic facts" and "conclusions" under the present Maryland law are necessary to enable the District Council to *grant* the requested rezoning. In a case involving a *denial* by the District Council of the requested rezoning, it is only necessary for the District Council to find that the applicant had failed to meet his burden of proof on any of the elements necessary to justify the requested rezoning or to find facts, upon the evidence, which otherwise lead the District Council to conclude that the requested rezoning should not properly be granted even if otherwise the District Council would be justified in granting the rezoning so far as the "change-mistake" rule is concerned. It is only when the denial of the requested rezoning conflicts with constitutional provisions that the courts interfere with that denial. *Spaid v. Board of County Commissioners for Prince George's County*, 259 Md. 369, 269 A. 2d 797 (1970).

In summary, the "basic facts" and "conclusions" the District Council is required to find are those appropriate to the ultimate action the District Council takes in a given case. In our opinion, the District Council made sufficient findings of basic facts and conclusions to support its denial of the application in the present case.

There was no evidence produced by the applicants which purported to delineate the "neighborhood" in which the alleged changes in the character of the neighborhood occurred. The lower court stated that the neighborhood had not been "defined." The burden of proof was upon the applicants to establish this. *Montgomery, supra.* They failed to meet this burden and, of course, failed to establish that there were changes in the character of the neighborhood.

## (3)

Finally, the appellants contend that the District Council erred in requiring them to establish first that the required elements of the "change-mistake" rule existed before the District Council would consider the "conditions" recommended by the Planning Commission. We do not agree with this contention.

In Prince George's County, conditional zoning is permitted by statute. See Sec. 59-839 of the Prince George's County Zoning Ordinance.

In our opinion, it was reasonable for the District Council to require the applicants to establish the elements of the "change-mistake" rule which would *permit* the District Council to grant the requested rezoning, if otherwise justified, before a consideration of the conditions applicable to such rezoning. It would have been a waste of time and effort to have considered the recommended conditions unless the applicants could establish, *prima facie*, that the District Council had the power under the Maryland law to grant the requested rezoning at all.

The appellants also contended that the District Council yielded to a "plebiscite" of neighbors in declining to grant the requested rezoning, relying upon our decisions in *Benner v. Tribbitt*, 190 Md. 6, 57 A. 2d 346 (1948); *Montgomery County Council v. Scrimgeour*, 211 Md. 306, 127 A. 2d 528 (1956) and *Mettee v. County Commissioners of Howard County*, 212 Md. 357, 129 A. 2d 136 (1957). These cases, in our opinion, are not applicable to the present case in that the evidence does not disclose that the District Council was moved by a "plebiscite of the neighbors" but, on the contrary, was justified on the evidence in denying the requested rezoning. Indeed, one of the applicants testified, as we have seen, that the "predominant view was in favor of our application"; and a number of residents filed petitions with the District Council *advocating* the granting of the application. There was hardly a "plebiscite" in the present case; and, as we have

observed, there is no evidence in the record indicating that the District Council decided the case upon this basis.

*Order of December 24, 1969, affirmed, the appellants to pay the costs.*