BOARD OF COUNTY COMMISSIONERS OF PRINCE GEORGE'S COUNTY ET AL. *v.* KINES ET AL.

(Two Appeals in One Record)

[No. 329, September Term, 1964.]

120

*Decided May 27, 1965.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, HORNEY, SYBERT and OPPENHEIMER, JJ.

*Russell W. Shipley* and *Lionell M. Lockhart,* with whom were *Robert B. Mathias, Harry L. Durity* and *Joseph S. Casula* on the brief, for the Board of County Commissioners, one of the appellants.

Submitted on brief by *H. Winship Wheatley, Jr.,* for the applicants for rezoning, the other appellants.

*Daniel R. Thompson* for the appellees.

Brief of *amicus curiae* filed by *Lawrence E. Carr, Jr., David A. Scott* and *Daniel R. Thompson* for the City of Carrollton.

HAMMOND, J., delivered the opinion of the Court.

Judge Digges reversed the action of the Board of County Commissioners of Prince George's County, sitting as the District Council, in rezoning fourteen acres of land on the north side of Good Luck Road near the new Capital Beltway from rural residential to R-10 (high-rise apartments) and six acres on the south side of Good Luck Road from rural residential to R-18 (garden-type apartments).

Both tracts of land and almost all of the surrounding area had been zoned rural residential in 1949, the year of the last comprehensive zoning. Over the years there have been a number of reclassifications in the vicinity of the two pieces of land, all but one having been to R-55 (single family residential), and some two thousand homes have been built. The one exception was a relatively small parcel of land near the Beltway, which had been rezoned local commercial about a week before the hearing before the District Council on the subject properties, to permit its use as a private club. Across the Beltway a piece of land had been rezoned for apartment use in 1958.

The Technical Staff and the Planning Commission recommended denial of the rezoning of the subject lots for five reasons. 1. There was no evidence of original error. 2. The significant changes in classification had been to single lot, single family residential use. 3. The uses permitted by the rezoning sought would be incompatible both as to type of structure and extent of density with existing uses, and the changes would,

therefore, constitute invalid spot zoning, as the adopted Plan for the Bladensburg area, which shows the subject lots for single family occupancy, confirms. 4. There is no direct access to the Capital Beltway. 5. The larger lot has been included in the County park acquisition program, financed largely by federal grants.

The proponents of the rezoning, the owners of the two lots and the contract purchasers of both, offered testimony as to the widening of nearby existing roads, the extension through the County of new high speed highways, such as the Beltway and the Baltimore-Washington Expressway, the recent and proposed creation of centers of employment throughout the County and the projected growth in population of the County. From all this the witnesses concluded that apartments would be successful, serve a need and not depreciate values of surrounding homes.

Judge Digges said:

"The defendants in this case concede that there was no error in the zoning as originally adopted by the Master Plan concerning the two properties which are the subject of this litigation. They do, however, contend that there has been a substantial change in the neighborhood since the original zoning, and therefore the District Council was justified, if not compelled, to adopt the two resolutions changing the zoning classifications heretofore referred to.

"The defendants rely principally on the testimony of Mr. Harry Boswell, Jr., a professional land planner and developer, to substantiate their position in this case. Through the testimony of Mr. Boswell, as well as to some extent other witnesses, the defendants attempt to show that there is a change in the neighborhood brought about principally because of the construction, either completed or in the process of being completed, of a number of arterial highways, either in the immediate vicinity or in the general area of these two properties.

* * *

"Everyone agrees that there has been a change in

the use to which the land in the area is being put since the original Master Plan was adopted. But at least as far as construction of buildings are concerned, the change has been from vacant land to single-family dwellings, and the classification therefore generally has been changed from R-R (Rural-Residential) to R-55 (Single-Family Dwellings).

"Mr. Boswell states that in his opinion apartments should be permitted in this area, and on these particular pieces of property, because the area has substantially changed due to the fact that there are main highways being built, with access therefor to places of employment for long distances in either direction from the property. He further states that he believes economically and socially a community should have apartments which are attractive to old people and therefore provide a well-rounded community.

\* \* \*

"The Court has no doubt that what Mr. Boswell says in this respect is true. But we believe his approach as to the change is too broad to be of assistance in light of the decisions of the Court of Appeals as we view them to be. There are many places of employment and other activities that come into the general Washington area from time to time which of course affect all of the Metropolitan Area. I am sure no one would contend that the construction of a building such as the Pentagon with many, many thousands of people employed therein does not have a substantial impact, and therefore affect at least to some extent all of the property within a great many miles of this mammoth building.

"I conclude that when the Court of Appeals' decisions refer to 'a change in the neighborhood,' they use that phrase in a much more restricted sense than is argued for by the defendants, and as is apparently interpreted by their witness Boswell. The exact area, of course, may vary from case to case, but is not as general or as extensive as is contended for here.

\* \* \*

"I conclude that the road improvements referred to in the testimony, and those to be improved in the immediate future if any, cannot solely be the cause of a zoning reclassification. The Court feels that the existence of new roads is a factor to be taken into consideration, but without some other change in the community or neighborhood the roads mentioned as constructed or to be shortly constructed thereby lessening the distances between points of employment and proposed living quarters cannot justify the action taken in this case.

"In addition to the road construction referred to, the only other change mentioned as having taken place in the immediate area is the construction of a park and recreational area, and a small area has recently been zoned for very limited commercial use, but the only substantial change has been in the use of formerly vacant land for single-family dwellings. It is true that there is an area on the opposite side of the Beltway which has been zoned for apartment use. But this limited access road undoubtedly will create quite a barrier between that property and the property with which we are concerned. It would seem, therefore, that the neighborhood with which we are dealing as a result of the Beltway is confined to the side of the Beltway where this property is located, and is pretty well dominated by the building of single-family houses in the subdivision known as Carrollton.

"The Court concludes, therefore, that there has been no sufficient change in the character of the neighborhood which will justify a zoning classification so as to permit use of the land which is the subject of this application for purposes other than for construction of single-family dwellings. The action of the District Council is therefore void."

We think Judge Digges' analysis of the evidence and his views as to the applicable law both were sound. There was no claim of original error and a reasoning mind would not rea-

sonably have found that there had been presented to it evidence of changes in the neighborhood substantial and pertinent enough to permit, much less compel, piecemeal rezoning. This is to say that the matter of change was not reasonably debatable. *Dal Maso v. Board of County Commissioners of Prince George's County*, 238 Md. 333; *MacDonald v. County Commissioners of Prince George's County*, 238 Md. 549; *Shadynook Imp. Assn. v. Molloy*, 232 Md. 265; *Montgomery County v. Ertter*, 233 Md. 414; *Greenblatt v. Toney Schloss Properties Corp.*, 235 Md. 9; *Board of County Commissioners v. Oak Hill Farms*, 232 Md. 274.

The County Commissioners argue that no valid or effective appeal was entered below and therefore the Circuit Court had no power to hear and decide the case. This claim is made because the protestants, the appellees here, did not follow the directions of Md. Rule B2 (of Ch. 1100 of the Rules) by serving upon the County Commissioners, pursuant to Rule 306c, prior to the filing with the clerk of the Circuit Court of the Order of Appeal, a copy of the Order of Appeal. The appellees, well within the time allowed for an appeal, filed with the clerk of the Circuit Court a pleading entitled "Petition for Review" in accord with the former practice. It recited the interests of the petitioners, the filing of the applications for rezoning, the hearing by and the actions of the District Council, alleged said actions were arbitrary, capricious and affected by errors of law, all to the prejudice of the petitioners, and prayed a review by the court and a reversal of the actions of the District Council. A summons and a copy of the Petition for Review were served upon the County Commissioners on the day after the petition was filed, several days before the expiration of the time for appeal.

Judge Digges refused to dismiss the appeal, finding that there had been substantial compliance with the appeal procedures. We agree. The Commissioners had full and timely notice that the protestants sought to overturn in the Circuit Court the actions of the District Council. Compare *Bishop v. Bd. of Co. Comm'rs*, 230 Md. 494; *Merrimack Park v. County Board*, 228 Md. 184.

*Orders affirmed, with costs.*