BOSLEY, ET AL. *v.* HOSPITAL FOR CONSUMP-
TIVES OF MARYLAND, ET AL.

[No. 188, September Term, 1966.]

*Decided April 6, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*Richard C. Murray* for appellants.

*W. Lee Harrison* for appellees.

BARNES, J., delivered the opinion of the Court.

The County Board of Appeals of Baltimore County (the Board) rezoned a 15.016 acre tract of land in the Ninth Election District of Baltimore County, owned by the appellee, Hospital for Consumptives of Maryland, commonly called Eudowood, from the R-10 and R-6 zones (residential lots of not less than 10,000 and 6,000 square feet, respectively) to the B-L (business, light) zone. The Board's action was affirmed by the Circuit Court for Baltimore County (Menchine, J.) on April 21, 1966. The appellants, who own and dwell in residences in the general vicinity of the 15.016 acre tract, protested the rezoning before the Board and took a timely appeal to this Court from the order of the Circuit Court.

The 15.016 acre tract (the subject property) is triangular in shape bounded on three sides by public roads, i.e., on the north by Joppa Road, a 48 foot paved road on a 70 foot right-of-way; on the east by Prince Road a 42 foot paved road on a 70 foot right-of-way; on the west-southwesterly side by Goucher Boulevard, which has a 110 foot right-of-way with two 36 foot paved lanes of travel. The proposed use to be made of the subject property by the contract purchaser, Vornado, Inc., is for a discount department store which will have a one-story building of 141,000 square feet with a parking area for 746 parking units. There are adequate public water and sewer facilities at the subject property for the proposed use.

The existing topography of the subject property is irregular. It is at the road level with Prince Road on the east of the site, but on the western one-third of the subject property—a triangular portion bounded by Joppa Road and Goucher Boulevard—there is a grade running as high as 40%. At the intersection of Goucher Boulevard and Joppa Road the property is 22 feet below the grade of the intersection.

The original zoning map, placing the subject property in the R-6 and R-10 zones, is dated November 14, 1955. At that

time neither Goucher Boulevard nor Prince Road were in existence, although there was testimony before the Board that the intention to construct these roads in the general area was known at the time the zoning map was adopted. However, neither road appears on the zoning map.

Prior to the adoption of the zoning map, the Hospital owned and used 300 acres of land which extended from Hillen Road on the south, to Joppa Road to the north and from the Greenbrier Development on the west to Pleasant Plains Road on the east. This large tract was reduced in 1954 by the sale of 150 acres to the Swarthmore Company, which developed the Eudowood Shopping Center, and by the sale of 20 acres to the Bendix Corporation. The portions of the original 300 acre tract had been farmed by the Hospital prior to the sales. The remaining land contained all of the hospital buildings and was used by the Hospital for its treatment of tubercular patients.

Beginning in 1960, roads were extensively developed in the area. Goucher Boulevard (then called Taylor Avenue Extended) was constructed from Loch Raven Boulevard to Prince Road and Prince Road was constructed from Goucher Boulevard to Joppa Road. In 1964 Joppa Road was widened from a 22 foot paved road (including shoulders) to a 48 foot road, and by means of a 24 foot fill the elevation of Joppa Road was raised substantially to form an intersection at grade with Goucher Boulevard. During this same period, Goucher Boulevard was extended from Prince Road to Providence Road on a 110 foot right-of-way providing two 36 foot wide paved lanes with a 12 foot median strip. The Hospital had protested the final location of Goucher Boulevard because it severed the subject property, containing the principal hospital buildings, from the remaining portion of the Hospital's property. Notwithstanding this protest, the road was built in its present location. The Hospital closed on June 30, 1964. The record does not indicate the value of the vacant buildings, but there was testimony that it cost the Hospital $10,000 a year to maintain them.

An engineer produced by the applicant at the hearing before the Board, testified in detail concerning substantial improvements made in the water and sewerage facilities serving the subject property since the 1955 zoning map was adopted.

Bernard Willemain, a well-qualified land planner, testified for the applicant before the Board. In his opinion, the R-10 and R-6 zoning was incorrect when placed on the subject property on November 14, 1955 since the zoning was inconsistent with the circumstances and knowledge that the County Commissioners had at that time. Mr. Willemain pointed out that the County Commissioners knew of the location of the property and its characteristics and that there was a proposed shopping center to be erected on 40 acres across the road from the subject property (25 acres of which was zoned B-L) subject to a contract of purchase when the zoning map was adopted.

Mr. Willemain testified that in 1954 the plans for extending Goucher Boulevard were based on the construction of a high level bridge which would be erected 20 feet *above* the existing railroad tracks in order to comply with the minimum requirements for steam and diesel trains. The proposed alignment of Goucher Boulevard at that time was different from the present existing road. In 1959, the railroad operation was discontinued and abandoned, so that Baltimore County was permitted to drop the originally proposed alignment and construction plans and to provide for the intersection of Joppa Road and Goucher Boulevard at grade.

It was also pointed out at the Board hearing that there had been four substantial changes in the zoning in the vicinity of the subject property from R-6 to R-A (residence-apartments) since the adoption of the original zoning map. One rezoning application from the R-6 to the R-A zone was for the development of approximately 36 acres, including a high-rise apartment, whereby 832 apartment units were allowed. This rezoned parcel is located approximately one-third of a mile from the subject property in the area lying south of Hillen Road. The application was approved by the Board on March 19, 1963 and was later approved by this Court. See *Rohde v. County Board of Appeals for Baltimore County*, 234 Md. 259, 199 A. 2d 216 (1964) in which we held that the Board did not act arbitrarily or capriciously in granting the rezoning as it was fairly debatable that the original zoning was erroneous or there had been a subsequent change in condition, or both.

Directly across from the subject property and within 200

feet of it, on the north side of Joppa Road and diagonally across from the intersection of that road and Prince Road, there have been three zoning changes. First, a rezoning from R-6 to R-A at Center Road and Joppa Road was approved by the Zoning Commissioner on July 26, 1965. Second, a companion property to that involved in the first change, located 137 feet west of Center Road on Joppa Road, was also reclassified from R-6 to R-A on March 22, 1962. No appeals were taken from either of these decisions. Third, a request for a variance to adapt apartment buildings to a particular site was approved on July 12, 1963.

In addition, the Board approved a special exception on July 14, 1964, for an elevator apartment building on a property located at Edgerton and Joppa Roads, also diagonally across the street from the subject property. On November 22, 1963, 8.1 acres, approximately one block south of the subject property, was rezoned from R-6 to R-A. This reclassification was final, although there was an appeal from the request for an elevator apartment building permit on the 8.1 acre tract. The balance of the Eudowood tract directly across Goucher Boulevard from the subject property, consisting of 30.9 acres between the Greenbrier Development and Goucher Boulevard, has been rezoned to the R-A zone for 525 apartment units which are now under construction.

Mr. Willemain concluded that because of the alleged error in original zoning, the changes in the neighborhood since the original zoning map was adopted, and the presence of the unused hospital buildings on the subject property was "an ideal property for business use." He pointed out that the intensive construction of apartments in the immediate area and a substantial increase in population made an additional commercial location necessary and desirable. The expert stated, moreover, that a tract of land the size of the subject property with its network of roads, uses and convenience could not be duplicated for a considerable distance from the subject property.

W. Worthington Ewell, a traffic expert with impressive qualifications, testified that the proposed use of the subject property would create no traffic hazard, stating specifically his rea-

sons for that opinion. His traffic study indicated that Goucher Boulevard was only used at 25% of its capacity.

Frederick P. Klaus, a well-qualified real estate expert, testified that the subject property could not economically be used for development in R-6 zoning and that the highest and best use of the property was for a business use. He testified that commercial expansion or reclassification in the area had not kept pace with the high-density reclassification. He also stated that the proposed use could not be seen from the homes on Holden Road, Overcrest Road and Brook Road as they now exist and that the occupants of the houses in the Greenbrier development after the intervening 31 acre tract is developed with apartments, could not see the proposed improvements on the subject property. He was of the opinion that "there is a need for additional commercial zoning in an area that has so much high density zoning for rental units," and that the subject property was appropriate to supply this need "because it is contiguous to an existing B-L zone, to the east, it is contiguous to an M-L zone to the west and it is a piece of property that is a triangle-shaped property surrounded by large boulevards."

Two owners of single-family dwellings in the Greenbrier Development and two similar owners on Hillen Road, both individually and in two instances representing two neighborhood improvement associations, testified in opposition to the proposed rezoning. They contended that there was no need for additional commercial rezoning as there were 18 or 19 vacancies in the Eudowood Shopping Center when they testified. They believed the rezoning would depreciate the value of their properties.

The principal witness for the protestants was George E. Gavrelis, the Director of Planning for Baltimore County. He expressed the opinion that there was no error in the original zoning map and that the construction of Goucher Boulevard was anticipated by the County Commissioners when that map was adopted in November 1955. He also testified that because the only rezoning changes in the immediate area were to more intensive residential use, commercial zoning would not be appropriate or justified.

The Board, in an extensive and carefully considered opinion, reviewed the facts in detail and concluded that there had

been an error in the original zoning and further that there had been a substantial change in the character of the neighborhood since 1955 sufficient to justify the granting of the proposed rezoning to B-L. The Board believed this rezoning would not depreciate the value or adversely affect the properties of the protestants.

On appeal, Judge Menchine in affirming the Board again reviewed the facts and in his careful opinion reached the following conclusion:

"It seems crystal clear to this Court that the record shows abundantly that there is evidence of a great many changes in the immediate neighborhood; that perhaps there was a lack of careful consideration for this particular property at the time of the adoption of the map; and certainly that there was no consideration of it in the light of Goucher Boulevard as it came to be laid out. Whether the latter circumstance is regarded as change or error would appear to be a matter of semantics after *Finney v. Halle,* 241 Md. 224. (See also *Dill v. Jobar Corp.,* [242 Md. 16, 217 A. 2d 564 (1966).] There certainly is evidence within the record that the property could not usefully be employed with an R-6 reclassification, except by the expedient of the removal of the buildings, or their substantial alteration under somewhat equivocal provisions of §402 of the Zoning Laws. Thus the record tends to show that conditions are such that error or change, or both, make zoning reclassification an issue for reasonable debate. The Board had to decide whether such reclassification should be permitted and, if so, whether it should be RA or BL. This case, in short, is singularly one for the exercise of expertise of the Board and its judgment if supported by substantial evidence cannot be disturbed by the Court. There is such substantial evidence."

We agree that there was sufficient substantial evidence before the Board to make its decision "fairly debatable" and hence not arbitrary, unreasonable or capricious.

In our opinion, the construction of Goucher Boulevard in its final location after the adoption of the zoning map in 1955, its severance of the subject property with the hospital buildings from the rest of the hospital land and the change of construction plans so that Goucher Boulevard met Joppa Road at grade, resulted in important changes in the neighborhood. Moreover, the rezoning changes subsequent to November 1955, previously discussed, were important changes in the law and resulted in substantial changes in the character of the neighborhood even though all of the rezoning changes were to more intensive residential use by an increase in density from R-6 or R-10 to R-A. The substantial development of housing units and the concurrent growth in population could reasonably lead to need for additional commercial zoning in the area to supply the wants of the increased population. At least, reasonable men could conclude—as the Board concluded—that these changes in condition in the area could justify the rezoning of the subject property to the B-L zone. The Courts may not substitute their judgment for that of the Board when the Board's decision is supported by substantial evidence and the issue before the Board was fairly debatable. *Vogel v. McCosh*, 242 Md. 371, 219 A. 2d 89 (1966). See *Finney v. Halle*, 241 Md. 224, 216 A. 2d 530 (1966) ; *Oursler v. Board of Zoning Appeals of Baltimore County*, 204 Md. 397, 104 A. 2d 568 (1954). See also *Rohde v. County Board of Appeals for Baltimore County*, *supra.*

*Order affirmed, the appellants to pay the costs.*