## KIRKMAN, ET AL. *v.* MONTGOMERY COUNTY COUNCIL, ET AL.

[No. 383, September Term, 1967.]

*Decided November 7, 1968.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, FINAN, SINGLEY and SMITH, JJ.

*John D. Bowman* for appellants.

*Lawrence E. Speelman,* with whom were *I. John Ritterpusch, Robert A. Gingell* and *Ritterpusch & Gingell* on the brief for Urbana Development Corporation, part of appellees. No brief filed by Montgomery County Council, other appellee.

SINGLEY, J., delivered the opinion of the Court.

The contract purchaser of an undeveloped tract (the Urbana property), some 35 acres northwest of Gaithersburg, in Montgomery County, knowing that the property had been zoned R-R (rural residential, single family, minimum area 20,000 square feet) by the zoning ordinance and comprehensive map adopted by the Montgomery County Council on 31 May 1958, decided to seek a reclassification of the property which would permit industrial use. The master plan for the vicinity of Gaithersburg adopted by the Maryland-National Capital Park and Planning Commission on 26 April 1961 had suggested that the property be given the higher classification of R-A (rural agricultural, minimum area two acres), but this recommendation was never adopted by the Council. Despite this, on 30 November 1965 the contract purchasers filed an application to have the property rezoned from R-R to I-1 (light industrial) or I-2 (heavy industrial).

On its northeast boundary, the Urbana property fronts for some 2,600 feet on a right of way of the Baltimore and Ohio Railroad. It is irregular in size, having a depth of some 950 feet at its widest part. Its southeast boundary (and only road

frontage) is approximately 540 feet on Game Preserve Road, an unimproved and narrow road which runs northeast from Cloppers Road (Maryland Route 117) west of Gaithersburg. The property is crossed by two utility lines: a 250 foot right of way for a high voltage transmission line of Potomac Electric Power Company and an immediately adjoining 32 foot easement for a gas transmission line owned by Colonial Pipe Line Company.

The Montgomery Planning Board adopted the report of its technical staff and recommended disapproval of the application for rezoning. The staff had decided that the character of the neighborhood was rural; that mistake in the original zoning had not been demonstrated; and that there had been no change in the character of the neighborhood.

On hearing by the Montgomery County Council, sitting as the District Council, the application was granted as to 33.2 acres of the property, which were rezoned I-1. The Council withheld from reclassification that portion of the tract which lay within 40 feet of the center line of Game Preserve Road, in anticipation of the widening of that road. In its opinion, the Council said:

> "The subject property is replete with encumbrances which indicate that the original zoning was erroneous. Gas-line easements, the PEPCO hi-line right-of-way and the presence of the B & O Railroad on the northern border of the subject tract make single-family development of the property most improbable. In addition, the rezoning of other tracts to the southeast has given an industrial flavor to the area."

The Council's reference to the rezoning of tracts to the southeast relates to the reclassification of three tracts, made subsequent to the adoption of the zoning ordinance of 1958:

(i) On 29 March 1960, 89.25 acres, lying approximately 1,000 feet to the southeast of the Urbana property had been rezoned I-3 (industrial park) by the County Council;

(ii) On 29 September 1964, two tracts of 11.2 acres and 3.174 acres, respectively, located approximately 6,000 feet from the Urbana property had been rezoned I-1 (light industrial) by the District Council;

(iii) On 6 February 1965, the County Council reclassified as I-1 30.63 acres of the 89.25 acres which had been zoned I-3 in (i) above.

All of these tracts had been originally classified R-R by the 1958 ordinance.

The appellants, who are the owners of adjacent residential property across Game Preserve Road appealed to the Circuit Court for Montgomery County. From an order affirming the action of the District Council, this appeal was taken.

The appellants would have us reverse the order of the lower court on the grounds that the record before the District Council was not sufficient to support the reclassification, or, alternatively, because the action amounted to spot zoning if it were supported by sufficient evidence. In our view, the lower court reached the correct result in affirming the action of the District Council, and its order should not be disturbed.

We have often repeated the principles here applicable: courts have no power to rezone and may not substitute their judgment for that of the expertise of the zoning authority. *Bosley v. Hospital for Consumptives,* 246 Md. 197, 227 A. 2d 746 (1967); *Board of County Comm'rs for Prince George's County v. Farr,* 242 Md. 315, 218 A. 2d 923 (1966). It has long been settled that the zoning authority's determination is correct if there were such legally sufficient evidence as would make the question fairly debatable. *Mayor & City Council of Greenbelt v. Board of County Comm'rs for Prince George's County,* 247 Md. 670, 234 A. 2d 140 (1967); *Agneslane, Inc. v. Lucas,* 247 Md. 612, 233 A. 2d 757 (1967). Further, the one who attacks the determination made by the authority must show that it was arbitrary or capricious. *Agneslane, Inc. v. Lucas, supra; Bosley v. Hospital for Consumptives, supra; Mayor & City Council of Balto. v. Sapero,* 230 Md. 291, 186 A. 2d 884 (1962).

We find no evidence in the record before us sufficient to support the Council's conclusion that the existence of the railroad,

power and gas lines indicates that the original zoning was erroneous. *Compare,* for example, *Bonnie View Country Club, Inc. v. Glass,* 242 Md. 46, 217 A. 2d 647 (1966). While formal testimony before the Council was limited in scope, there was introduced evidence of the reclassification, between 1960 and 1965, of land in the immediate area from R-R to I-1 and I-3. This, of itself, lent support to the conclusion that there was sufficient change in the character of the surrounding area to justify rezoning of the Urbana property.

Judge Shearin, who heard the case below, aptly summarized the situation.

"In exercising its appellate jurisdiction in zoning matters, the function of the Court is quite limited. As stated by the Court of Appeals in *Wakefield v. Kraft,* 202 Md. 136, [96 A. 2d 27 (1953)]:

'It is not the function, duty or right of a Court to zone or rezone, but only to determine whether the legislative body has properly applied the governing law to the facts. If there is room for reasonable debate as to whether the facts justify the municipal legislature in deciding the need for its enactment, it must be upheld. It is only when there is no room for reasonable debate, or a record barren of supporting facts, that the Court can declare the legislative action arbitrary, capricious, discriminatory or an unequal application of the law.' Supra, p. 142.

"In *Wakefield,* at p. 151, the Court further observed: 'There was *substantial evidence* to sustain the County Commissioners; whether that evidence was to be relied on, *what inferences were to be drawn from it, and whether those which the Commissioners drew were right or wrong, is of no proper concern to a Court.'* (Emphasis in original)

"The 'substantial evidence' test has been further defined and refined in later cases, including *Board v. Oak Hill Farms,* 232 Md. 274, [192 A. 2d 761 (1963)], and *Snowden v. City of Baltimore,* 224 Md. 443, [168 A. 2d 390 (1961)]. 'Substantial evidence'

is held to be 'more than a scintilla' and such evidence 'as a reasonable mind might accept as adequate to support a conclusion' and 'enough to justify, if the trial were to a jury, a refusal to direct a verdict.' *Board v. Oak Hill Farms,* supra. In *Snowden,* supra, the Court said, inter alia, "The heart of the fact finding process often is the drawing of inferences from the facts. The administrative agency is the one to whom is committed the drawing of whatever inferences reasonably are to be drawn from the factual evidence. " 'The Court may not substitute its judgment on the question whether the inference drawn is the right one or whether a different inference would be better supported. The test is reasonableness, not rightness." Davis, [Administrative Law Treatise (1958)], Sec. 29.05, p. 139.' "

In our opinion, the Council had before it evidence of change sufficient to support the granting of the application and to rebut a contention that its action amounted to spot zoning. *Board of County Comm'rs of Howard County v. Turf Valley Associates,* 247 Md. 556, 233 A. 2d 753 (1967). On the state of the record before it, the Council's action cannot be regarded as arbitrary, unreasonable or capricious.

*Order affirmed; costs to be paid by appellants.*