### MILLER *v.* ABRAHAMS

[No. 216, September Term, 1969.]

*Decided March 3, 1970.*

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Marvin I. Singer,* with whom were *Sullivan, Wiesand & Singer* on the brief, for appellant.

*W. Lee Harrison* for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

This is indeed a twice-told tale. The first telling will be found in *Miller v. Abrahams,* 239 Md. 263 (1965). In this, the second telling, the parties are the same; the property is the same; the same reclassification is being sought; the Zoning Commissioner again denied the petition; the Board of Appeals repeated its reversal of the Commissioner; the circuit court once more affirmed the action of the Board of Appeals; and, as we did before, we shall reverse the order of the trial court.

In March 1962 the appellee (Abrahams) paid $46,000 for a 9.1967 acre tract of R-6 (Residential, 6000 square feet minimum) land on the north side of Old Court Road in the Second Election District of Baltimore County, about midway between Liberty Road and Reisterstown Road. For some months before Abrahams bought the property the Planning Board had been engaged in the preparation of a preliminary map delineating the recommendations it proposed to make to the County Council for the impending Comprehensive Rezoning of the Western Planning Area. As shown on that map, Old Court Road was relocated so as to eliminate a "dog-leg" and widened from 16 feet to 60 feet. As relocated Old Court Road bisected the 9.1967 acre tract. The zoning classification indicated on the map for the 5.2 acre portion on the north side of the road was B-L (Business-Local). The portion

on the south side was itself bisected by the proposed extension of Rolling Road which, as shown, would intersect relocated Old Court Road. Abrahams was aware of all this and there is no doubt that, in deciding to acquire the property, he found it quite persuasive. The Council, however, rejected the Planning Board's zoning recommendation and when, on 15 November 1962, it adopted the comprehensive zoning map the R-6 classification was continued. Two months later Abrahams sought the reclassification of the 5.2 acre parcel to B-L claiming original mistake. The details of his unsuccessful campaign will be found in *Miller v. Abrahams, supra.* In May 1967 Abrahams embarked on another sortie to obtain the B-L classification, this time claiming change in the character of the neighborhood. The Zoning Commissioner denied his petition; the Board of Appeals reversed the Commissioner; the court below affirmed the Board; and here we all are again.

It is conceded that the only issue before us is whether Abrahams has produced evidence of a change in the character of the neighborhood sufficient to justify, i.e., make fairly debatable, a reclassification from R-6 to B-L. If not conceded, at least no one disagrees that the area between Liberty Road and Reisterstown Road, in the vicinity of the Abrahams property, has been and is now devoted almost exclusively to residential use. About the only exception is a service station at Old Court Road and Church Lane, a mile or so from the Abrahams property. Newly constructed Old Court Junior High School and a $300,000 church are on the south side of Old Court Road, now 60 feet wide and built in the precise location shown on the 1962 map. The appellant (Miller) still lives on the five acre tract adjoining Abrahams' property to the west.

The evidence of change to which Abrahams seems to attach the greatest significance is the increase, since 1962, in population in the vicinity of his property. A claim of 11,000 is made; this, to be sure, is an obvious exaggeration. There can be no doubt, however, that a number of people have moved into the neighborhood but, as the

trial judge, Maguire, J., observed, "the testimony seems unable to narrow the area in which the increase occurred beyond the second district in general," an area of about 60 square miles. We have held, of course, that "a mere increase in population does not prove a change in the character of the neighborhood to justify another type of zoning." *County Commissioners v. Fairwinds Beach Club,* 230 Md. 569, 572 (1963). By way of riposte Abrahams quotes from the opinion of Judge Barnes, who spoke for the Court in *Bosley v. Hospital for Consumptives,* 246 Md. 197, 204 (1967). The excerpt is as follows:

> "The substantial development of housing units and the concurrent growth in population could reasonably lead to *need* for additional commercial zoning in the area to supply the wants of the increased population." (Emphasis ours.)

He buttresses the excerpt quoted above with a quotation from *Cassel v. City of Baltimore,* 195 Md. 348, 355-56 (1950):

> "On the other hand, it has been decided that a use permitted in a small area, which is not inconsistent with the use to which the larger surrounding area is restricted, although it may be different from that use, is not 'spot zoning' when it does not conflict with the comprehensive plan but is in harmony with an orderly growth of a new use for property in the locality. The courts have accordingly upheld the creation of small districts within a residential district for use of grocery stores, drug stores and barber shops, and even gasoline filling stations, for the accommodation and convenience of the residents of the residential district. [Citing cases.]"

Counsel should know that the quotation from *Cassel* is mere comment, well below the level of *obiter dictum.* Indeed we held, in *Cassel,* that the reclassification of a single property so as to allow its use as a funeral home

in a residential area was "spot zoning," especially since there was no showing of a public need for it. *See Minor v. Shifflett,* 252 Md. 158 (1969). In *Bosley* the construction of Goucher Boulevard and Prince Road, the locations of which had not been determined when the zoning map was adopted, effected a dramatic change in the character of the neighborhood; moreover, there was proof of a need for additional commercial zoning. In the record before us the "evidence" of public need is little more than wishful thinking and, in our judgment, too thin to make the issue fairly debatable. In fact, it was conceded that there are "extensive shopping facilities of all kinds on Liberty Road [2¼ minutes away] and on Reisterstown Road [3 to 3¾ minutes away]." Much was made of the notion that residents of the area would be able to *walk* to Abrahams' shopping center. The short and melancholy answer to this is the common knowledge that it is a poor and disadvantaged citizen indeed who walks to a shopping center in this day and age. Mr. W. Worthington Ewell, a traffic expert, testified to that general effect.

Frederick P. Klaus and Bernard Willemain, familiar names in the folklore of zoning,[1] testified, as experts, in respect of eight reclassifications, said to be significant, seven of which were from R-6 to R-A (Residence-Apartments). The first was 700 feet from the Abrahams property; the second was 1200 feet distant; the third, 2100 feet. The rest were a mile or more away. Although most of the properties had been reclassified several years before the hearing none of them had been built upon and no one could say when construction of any kind would be commenced. Although Mr. Willemain insisted the apartment zoning would bring more people to the area, thereby creating a need for commercial facilities, he conceded the residential character of the neighborhood; he even went

---

1. *See, e.g., Wells v. Pierpont,* 253 Md. 554 (1969); *Carey v. Martin,* 251 Md. 446 (1968); *Ark Readi-Mix v. Smith,* 251 Md. 1 (1968); *France v. Shapiro,* 248 Md. 335 (1968); *Agneslane, Inc. v. Lucas,* 247 Md. 612 (1967); *Lambert v. Seabold,* 246 Md. 562 (1967); *Bosley v. Hospital,* 246 Md. 197 (1967); *Finney v. Halle,* 241 Md. 224 (1966).

so far as to say that the reclassification of Abrahams' property to B-L would *not* change its character.

We think it is quite clear that further comment in respect of the significance of these reclassifications has been made unnecessary by our decisions in *Wells v. Pierpont*, 253 Md. 554 (1969), and *Randolph Hills v. Whitley*, 249 Md. 78 (1968).

Abrahams contends, albeit halfheartedly, that the realignment and widening of Old Court Road, as actually accomplished in 1966, contributed in large measure to a change in conditions which, in turn, effected a substantial change in the character of the neighborhood. The same argument in respect of an almost identical situation was made, and rejected, in *Wells v. Pierpont, supra. See also Dorf v. Mullendore*, 255 Md. 367 (1969).

Once more we repeat that

> "[i]t is now firmly established that there is a strong presumption of the correctness of * * * comprehensive rezoning, and that to sustain a piecemeal change therefrom there must be produced strong evidence of * * * substantial change in the character of the neighborhood, * * * [and] the burden of proof facing one seeking a zoning reclassification is quite onerous." *Wells v. Pierpont, supra* at 557.

As Abrahams failed to sustain the burden of proving mistake in the "first telling," so has he failed here to sustain the burden of proving a substantial change in the character of the neighborhood. As we said at the outset, Judge Maguire's order will be reversed.

> *Order reversed.*
> *Costs to be paid by appellee.*